DECISION.
{¶ 1} Defendant-appellant Theodore Hoffert appeals his conviction on two counts of felonious assault, with gun specifications on each count, for firing a shotgun at two Cincinnati Police Officers. We affirm the findings of guilt, but conclude that because the trial court failed to inform Hoffert of the ramifications of post-release control, the sentence must be vacated and the case remanded for proper sentencing.
{¶ 2} On June 23, 2000, at about 3:30 am, Cincinnati Police Officers Patrick Murray and Mark Fogel responded to the 900 block of Grand Avenue to investigate possible DUI and menacing offenses involving Hoffert. Officer Murray noticed movement on the second floor of 914 Grand Avenue and pulled his police car up to the curb so that his side was closest to the window of the house. Officer Murray, who was familiar with Hoffert, pointed a spotlight at the window and called out Hoffert's name, requesting him to come down and talk with the officers.
{¶ 3} Hoffert did not want to come down, but the officers spent about five minutes attempting to coax Hoffert out. Officer Murray testified that Hoffert asked him if "that bitch" sent him over to Hoffert's home, which the officer acknowledged. Hoffert then said, "Don't worry about it, I'll take care of it myself." When asked by the officers what he meant, Hoffert said, "I have a shotgun and I'll take care of it." Seconds later, both officers saw the end of a gun barrel move across the window. Officer Murray testified that he immediately "hightailed it" down the street. The officers drove south on Grand, turned west at the corner, and swung the car around, stopping and exiting quickly. They then went to the edge of the house at the corner where they could see Hoffert's window while using the home for cover. As Officer Murray approached the corner of the house, he saw a flash and heard a loud bang that sounded like a gunshot. Officer Fogel testified that he saw the blast come from Hoffert's window. Both officers heard pellets falling from the sky, hitting the roof of the police cruiser and the house roof nearby. Officer Murray radioed for assistance, and two hours later, Hoffert was arrested.
{¶ 4} Hoffert was indicted on three counts of felonious assault in violation of R.C. 2903.11(A)(2), each first-degree felonies, with each count including a firearm specification under R.C. 2941.145(A). The trial court found Hoffert guilty on two counts of felonious assault with gun specifications and acquitted Hoffert on the third count. After the findings of guilt, Hoffert filed motions for a judgment of acquittal and for a new trial. At the sentencing hearing, the trial court denied both of Hoffert's motions and sentenced Hoffert to three years for each assault conviction, as well as to three years on each gun specification, to be served concurrently.
{¶ 5} In his first assignment of error, Hoffert argues that there was insufficient evidence to support his conviction for felonious assault with gun specifications, and that his conviction was against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are distinct. Sufficiency of the evidence challenges the adequacy of the evidence, while manifest weight challenges the credibility of the evidence.[1]
{¶ 6} Whether the evidence is legally sufficient to sustain a conviction is a question of law.[2] In the review of a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt.[3] The conviction will not be disturbed unless we hold that reasonable minds could not reach the conclusion reached by the trier of fact.[4]
{¶ 7} Hoffert was convicted of felonious assault under R.C.2903.11(A)(2), which states that "[n]o person shall knowingly *** [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
{¶ 8} The culpable mental state of knowingly is defined in Ohio as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[5]
{¶ 9} An attempt to commit an offense is made when a person purposely or knowingly engages in conduct that, if successful, would constitute or result in the offense.[6] A person making a criminal attempt must make a substantial step in a course of conduct planned to culminate in the commission of the crime.[7] The substantial step must be strongly corroborative of the actor's criminal purpose.[8]
Therefore, to prove the element of attempt to cause physical harm in this case, the state was required to prove that Hoffert did an overt act that was some substantial but ineffectual step directed towards accomplishing the physical harm through the use of a deadly weapon.[9]
{¶ 10} The Ohio Supreme Court has held that the act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of felonious assault.[10] But "there would be little doubt that a reasonable jury could convict a defendant of felonious assault if he had pointed his [weapon at the victim] and either fired or attempted to discharge his weapon in her direction."[11]
{¶ 11} The state presented evidence that Hoffert shot the gun in the direction of the officers. Officer Fogel testified that, as soon as the officers saw a gun in the window, they drove south on Grand, turned west at the corner, turned the car around and got out. The officers were, therefore, southwest of Hoffert's window. Defense expert Larry Dehus, who examined the shotgun ammunition evidence in this case, along with visiting and measuring the scene, testified that the shotgun was aimed in a southwest direction from the window of Hoffert's house. Both officers testified that the pellets hit their police car and the roof of the house that they were taking cover behind. Therefore, the evidence indicated that Hoffert pointed his gun in the direction of the officers and fired, which was sufficient to support a finding of felonious assault.
{¶ 12} Despite this evidence, Hoffert argues that he could not have intended to physically harm the officers because he shot up into the air, and because the distance was too great for that particular gun and ammunition to reach the officers and physically harm them. These arguments are flawed.
{¶ 13} First, shooting up into the air instead of directly at the officers was consistent with an attempt to cause physical harm to the officers. Firearm expert Dehus testified that the shotgun blast out Hoffert's window was fired in an upward trajectory of 45 degrees or more. The upward trajectory allowed more distance for the shot. The officers were near a stop sign at the corner, which was just over 60 yards away from Hoffert's window. If the gun was fired directly at the stop sign, the shots would have hit the ground before reaching the sign, since the effective range for the shotgun with that ammunition was between 20 and 30 yards. Dehus testified, "You could hit something at 60 yards but you would have to aim much higher to compensate for the fall." Therefore, Hoffert's aiming of the gun into the air was consistent with him firing at the officers and attempting to cause them physical harm.
{¶ 14} Second, Hoffert's claim that the distance precluded any finding of intent to physically harm the officers fails. It is no defense to an attempt to argue that, in retrospect, the offense could not have been committed due to a factual or legal impossibility.[12] The fact that the officers were simply too far away for Hoffert's particular gun and ammunition to physically harm them did not exculpate Hoffert for his ineffectual attempt.
{¶ 15} The evidence supported the conclusion that Hoffert shot the gun out his window, in the direction of the officers, and up in the air so that the shot would travel the distance to the officers. We hold that the evidence presented by the state was sufficient as a matter of law to support the trial court's findings of guilt on two counts of felonious assault.
{¶ 16} Each of Hoffert's assault convictions also included a gun specification, which calls for a mandatory three-year prison term if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."[13] We also hold that there was sufficient evidence to support the trial court's finding on the gun specification for each conviction of felonious assault.
{¶ 17} Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented.[14] When inquiring into the manifest weight of the evidence, we sit as a thirteenth juror and make an independent review of the record.[15] We must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[16] This discretionary power should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction."[17]
{¶ 18} Upon review of the record, we cannot say that the trial court lost its way in finding Hoffert guilty of felonious assault. The trial court could have concluded that the evidence demonstrated that Hoffert intended to cause physical harm to the officers, and that Hoffert took action to carry out that intent. Therefore, we hold that the manifest weight of the evidence supported Hoffert's conviction for felonious assault with gun specifications.
{¶ 19} For the same reasons, we conclude that the trial court did not err by denying Hoffert's motions for acquittal and for a new trial. The trial court's findings of guilt were supported by sufficient evidence and were not contrary to law. Accordingly, Hoffert's first assignment of error is overruled.
{¶ 20} In his second assignment of error, Hoffert contends that the trial court erred by failing to notify him at his sentencing hearing of the possibility of post-release control and the ramifications of violating post-release supervision or post-release-control sanctions, as mandated by R.C. 2929.19(B)(3). In our recent decisions of State v.Dejanette[18] and State v. Brown,[19] we held that a trial court's failure to verbally notify a defendant about the possibility of post-release control at the sentencing hearing required us to vacate the sentence and remand the case so that the trial court could properly advise the defendant according to R.C. 2929.19(B)(3). Our review of the record shows, and the state concedes, that the trial court did not properly notify Hoffert in this case. Therefore, Hoffert's second assignment of error is sustained.
{¶ 21} We affirm the trial court's judgment with respect to the findings of guilt. But we vacate Hoffert's sentence and remand this cause for the trial court to notify Hoffert about post-release controls and sanctions as required by R.C. 2929.19(B)(3).
Judgment accordingly.
Sundermann and Winkler, JJ., concur.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[2] Id. at 386.
[3] See State v. Jones, 90 Ohio St.3d 403, 417, 2000-Ohio-187,739 N.E.2d 300; State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492.
[4] Id.
[5] R.C. 2901.22(B).
[6] R.C. 2923.02(A).
[7] See State v. Woods (1976), 48 Ohio St.2d 127, 131, 357 N.E.2d 1059, paragraph one of the syllabus.
[8] Id.
[9] See State v. Kline (1983), 11 Ohio App.3d 208, 214,464 N.E.2d 159.
[10] See State v. Brooks (1989), 44 Ohio St.3d 185, 192,542 N.E.2d 636.
[11] Id.
[12] R.C. 2923.02(B).
[13] R.C. 2941.145(A).
[14] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[15] See id.; Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
[16] State v. Otten (1986), 33 Ohio App.3d 339, 340,515 N.E.2d 1009.
[17] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[18] 1st Dist. No. C-010693, 2002-Ohio-4802.
[19] 1st Dist. No. C-020162, 2002-Ohio-5983.